IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES HAMILTON, ) Case. No. 1:15-CV-2142-JKB

Plaintiff,

v.

WILLIAM L. PALLOZZI, et al.,

Defendants.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiff James Hamilton, by and through undersigned counsel, and submits his Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment.

Dated: October 26, 2015

Respectfully submitted,

By: /s/ Alan Gura
Alan Gura*
Gura & Possessky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
alan@gurapossessky.com

*Admitted pro hac vice

By: /s/ Cary J. Hansel
Cary J. Hansel
Hansel Law, P.C.
2514 N. Charles Street
Baltimore, MD 21218
301.461.1040/Fax 443.451.8606
cary@hansellaw.com

Attorneys for Plaintiff

TABLE OF CONTENTS

Preliminary Statement. . . . . . . . . . 1

Statement of Facts. . . . . . . . . . 2

1. The Relevant Regulatory Scheme. . . . . . . . . . 2

2. James Hamilton's Record and Personal Circumstances. . . . . . . . . . 2

3. Defendants' Disarmament of Hamilton. . . . . . . . . . 4

Summary of Argument. . . . . . . . . . 5

Argument. . . . . . . . . . 5

I. "Presumptively" Constitutional Felon Disarmament Laws Are Subject to As-Applied Challenges. . . . . . . . . . 5

II. Maryland's Felon Disarmament Provisions Cannot Be Constitutionally Applied to Hamilton Given His Factual Circumstances. . . . . . . . . . 7

Conclusion. . . . . . . . . . 11

TABLE OF AUTHORITIES

Cases

*Binderup* v. *Holder*, No 13-6750,
2014 U.S. Dist. LEXIS 135110 (E.D. Pa. Sept. 25, 2014)........................ 10, 11

*Britt v. State*,
363 N.C. 546, 681 S.E.2d 320 (N.C. 2009). ........................................ 10

*District of Columbia* v. *Heller*,
554 U.S. 570 (2008)................................................. 5, 7-9

*Ezell* v. *City of Chicago*,
651 F.3d 684 (7th Cir. 2011) ................................................ 11

*Jones* v. *State*,
420 Md. 437 (2011)................................................... 2

*McCloud* v. *Dep't of State Police*,
426 Md. 473 (2011)................................................... 2

*Schrader* v. *Holder*,
704 F.3d 980 (D.C. Cir. 2012)............................................. 6

*Suarez* v. *Holder*, No. 14-968,
2015 U.S. Dist. LEXIS 19378 (M.D. Pa. Feb. 18, 2015)..................... 8, 10, 11

*United States* v. *Barton*,
633 F.3d 168 (3d Cir. 2011). ........................................ 5, 9, 10

*United States* v. *Carpio-Leon*,
701 F.3d 974 (4th Cir. 2012)........................................... 6, 8

*United States* v. *Chester*,
628 F.3d 673 (4th Cir. 2010) ........................................... 6-8

*United States* v. *Pruess*,
703 F.3d 242 (4th Cir. 2012)........................................... 8, 9

*United States* v. *Smoot*,
690 F.3d 215 (4th Cir 2012). .......................................... 6, 9

*United States* v. *Torres-Rosario*,
658 F.3d 110 (1st Cir. 2011)............................................. 6

*United States* v. *Williams*,
616 F.3d 685 (7th Cir. 2010). . . . . . . . . . 5, 6

*Unites States* v. *Moore*,
666 F.3d 313 (4th Cir. 2012). . . . . . . . . . 6, 8, 9

Statutes and Rules

18 U.S.C. § 922(g). . . . . . . . . . 7

18 U.S.C. § 922(g) . . . . . . . . . . 9

18 U.S.C. § 922(g)(1). . . . . . . . . . 10

18 U.S.C. § 925(c). . . . . . . . . . 7, 9, 10

Md. Crim. Law Code Ann. § 8-204. . . . . . . . . . 4

Md. Crim. Law Code Ann. § 8-205. . . . . . . . . . 4

Md. Crim. Law Code Ann. § 8-209. . . . . . . . . . 4

Md. Pub. Safety Code Ann. § 5-101(g). . . . . . . . . . 2

Md. Pub. Safety Code Ann. § 5-133(b)(1). . . . . . . . . . 2, 4

Md. Pub. Safety Code Ann. § 5-134. . . . . . . . . . 2

Md. Pub. Safety Code Ann. § 5-144(b). . . . . . . . . . 2, 4

Md. Pub. Safety Code § 5-101(r)(1). . . . . . . . . . 2

Md. Pub. Safety Code § 5-205(b)(1). . . . . . . . . . 2, 4

Md. Pub. Safety Code § 5-205(d). . . . . . . . . . 2

Va. Code Ann. § 18.2-192. . . . . . . . . . 3

Va. Code Ann. § 18.2-193. . . . . . . . . . 3

Va. Code Ann. § 18.2-195. . . . . . . . . . 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

James Hamilton is not, by any measure, a violent person. Nothing about Hamilton, a married father raising several children, with significant engagement in youth sports, remotely suggests that his possession of firearms would endanger public safety. To the contrary—Hamilton is a registered Armed Security Officer and Private Security Services Instructor with the Virginia Department of Criminal Justice.

Yet Defendants deprive Hamilton of his fundamental right to keep and bear arms on account of one bad, if decidedly non-violent and non-dangerous decision he once made: allowing the unauthorized use of a credit card. Hamilton has made restitution for that offense. His rights were fully restored by Virginia, the state in which he was convicted. Hamilton consequently faces no federal firearms prohibition.

Maryland law imposes a firearms disability on Hamilton on account of this one transgression, and affords him no avenue for relief. But the Constitution is not silent on the question. The Fourth Circuit, like most courts, provides that individuals are constitutionally entitled to as-applied relief from firearms disabilities that, however sensible as a general matter, do not comport with traditional grounds for disarmament in the context of an individual's particular case.

There are no factual disputes as to why Maryland disarms Hamilton, or as to his personal circumstances. Hamilton is entitled to summary judgment as a matter of law.

STATEMENT OF FACTS

1. *The Relevant Regulatory Scheme*

A handgun is considered a "regulated firearm" under Maryland law. Md. Pub. Safety Code § 5-101(r)(1). Maryland law provides that "a person may not possess a regulated firearm if the person: (1) has been convicted of a disqualifying crime . . . ." Md. Pub. Safety Code Ann. § 5-133(b)(1). Possession of a handgun in violation of this provision is a misdemeanor punishable by up to 5 years imprisonment, a $10,000 fine, or both. Md. Pub. Safety Code Ann. § 5-144(b); *Jones* v. *State*, 420 Md. 437 (2011). The same punishment applies to "[a] dealer or other person," who "may not sell, rent, or transfer a regulated firearm to a purchaser, lessee, or transferee who the dealer or other person knows or has reasonable cause to believe . . . (2) has been convicted of a disqualifying crime . . . ." Md. Pub. Safety Code Ann. § 5-134.

Maryland forbids the possession of rifles and shotguns by anyone convicted of a "disqualifying crime." Md. Pub. Safety Code § 5-205(b)(1). A violation of this provision is a misdemeanor punishable by up to 3 years' imprisonment, a $1000 fine, or both. Md. Pub. Safety Code § 5-205(d). "'Disqualifying crime' means . . . (2) a violation classified as a felony in the State . . . ." Md. Pub. Safety Code Ann. § 5-101(g). The term extends to crimes committed in other states, if the equivalent crime is a felony in Maryland. *McCloud* v. *Dep't of State Police*, 426 Md. 473 (2011).

2. *James Hamilton's Record and Personal Circumstances.*

James Hamilton, an American citizen residing in Maryland, is over the age of 21. Hamilton Decl. ¶¶ 1-2. Hamilton is not under indictment, and has never been convicted of a misdemeanor crime of domestic violence, any other crime of violence, or any common law crime for which he received a sentence exceeding two years imprisonment. *Id.* ¶ 2.

Hamilton is not a fugitive from justice, habitual drunkard, or an unlawful user of or addicted to any controlled substance. *Id.* ¶ 3. Hamilton has not been adjudicated a mental defective or committed to a mental institution, nor has he been voluntarily admitted to a mental institution. *Id.* ¶ 4. Hamilton does not suffer from any mental disorder, nor has he ever been found incompetent to stand trial or not criminally responsible by reason of insanity. *Id.* Hamilton has not been discharged from the Armed Forces under dishonorable conditions, has never renounced his citizenship, and has never been the subject of a restraining order relating to an intimate partner. *Id.* ¶ 5.

Hamilton had agreed to let an individual buy him a laptop on a stolen credit card. As a result, on November 6, 2006, Hamilton was convicted by the Rockbridge County (Virginia) Circuit Court of three felonies: one count of credit card fraud, in violation of Va. Code Ann. § 18.2-195; one count of credit card theft, in violation of Va. Code Ann. § 18.2-192; and one count of credit card forgery, Va. Code Ann. § 18.2-193. He received a suspended sentence of four years, and was ordered to pay $1,247.90 in restitution and $1,090.00 in court costs. *Id.* ¶ 6; Exhibit A. Hamilton Decl., ¶ 6.

Hamilton successfully completed probation, made restitution, and paid his costs. But owing to this conviction, Hamilton lost his political rights in Virginia: the rights to vote; hold public office; sit on a jury; serve as a notary; and ship, transport, possess or receive firearms. *Id.* ¶ 7. On November 20, 2013, the Governor of Virginia restored Hamilton's rights to vote, hold public office, sit on a jury, and serve as a notary. *Id.* ¶ 8; Exhibit B. On April 22, 2014, the Circuit Court for Spotsylvania County, Virginia, restored Hamilton's firearms rights under Virginia law. Hamilton Decl., ¶ 9; Exhibit C. Hamilton is now a registered Armed Security Officer with the Virginia Department of Criminal Justice Services, certified in the use of handguns and shotguns. Hamilton Decl., ¶ 10; Exhibit D.

Hamilton has been happily married for over seven years. He resides with two of his children, and continues to support, and be involved in the lives of all his children, including those from an earlier marriage. Hamilton Decl., ¶ 11. Hamilton also serves as the head coach of an elite junior league wrestling team, supervising the training, competition, and travel of children ages five through sixteen. *Id.* ¶ 12. He has no history of violent conduct. *Id.* ¶ 13. Hamilton intends to possess a handgun and a long gun to defend himself and his family at home. *Id.* ¶ 14.

3. *Defendants' Disarmament of Hamilton.*

Maryland's provisions equivalent to those of which Hamilton was convicted in Virginia are Md. Crim. Law Code Ann. § 8-204, credit card theft, a misdemeanor; Md. Crim. Law Code Ann. § 8-205, credit card counterfeiting, a felony; and Md. Crim. Law Code Ann. § 8-209, receiving property by stolen, counterfeit, or misrepresented credit card, a felony on the facts of Hamilton's case.

Prior to obtaining any firearms, Hamilton sought a permit to carry a handgun from the Maryland State Police. Hamiton Decl., ¶ 14. The police's Licensing Division informed Hamilton that he could not possess a firearm in Maryland, owing to his Virginia conviction, unless he were to obtain a full pardon from Virginia's governor. The State of Maryland does not offer Hamilton any procedure by which he might regain his firearm rights in Maryland. Defendant Frosh's office subsequently confirmed this position. *Id.* Hamilton refrains from obtaining a firearm only because he reasonably fears arrest, prosecution, incarceration and fine, under Md. Pub. Safety Code Ann. §§ 5-133(b)(1), 5-144, 5-205(b)(1), instigated and directed by Defendants, should he follow through with his plan to obtain a firearm. *Id.* ¶ 15.

## SUMMARY OF ARGUMENT

James Hamilton is a non-violent, non-dangerous, fully rehabilitated offender whose disarmament cannot be justified on traditional, if any, grounds. Exactly what do the Defendants believe Hamilton is more likely to do with firearms than the typical, responsible law-abiding cittizen? And what is the basis, if any, for that belief?

Hamilton is plainly not a typical felon. His non-violent background, unremarkable criminal history, stable family life, role in the community, and employment as an armed guard in the state that once convicted him but has since restored to Hamilton all of his rights, suffice to establish entitlement to as-applied Second Amendment relief. Hamilton is entitled to summary judgment.

## ARGUMENT

### I. "PRESUMPTIVELY" CONSTITUTIONAL FELON DISARMAMENT LAWS ARE SUBJECT TO AS-APPLIED CHALLENGES.

In upholding the individual right to bear arms, the Supreme Court explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which it termed "presumptively lawful." *District of Columbia* v. *Heller*, 554 U.S. 570, 626-27 & n.26 (2008). Virtually every court to have considered the matter has determined that by describing felon disarmament laws as "presumptively lawful," the Supreme Court allowed for as-applied challenges.

"By describing the felon disarmament ban as 'presumptively' lawful, the Supreme Court implied that the presumption may be rebutted." *United States* v. *Barton*, 633 F.3d 168, 173 (3d Cir. 2011). "*Heller* referred to felon disarmament bans only as 'presumptively lawful,' which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge." *United States* v. *Williams*, 616 F.3d 685, 692 (7th Cir. 2010).

"[G]iven the 'presumptively lawful' reference in *Heller*—the Supreme Court may be open to claims that some felonies do not indicate potential violence and cannot be the basis for applying a categorical ban. Possibly it might even be open to highly fact-specific objections." *United States* v. *Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011); *Schrader* v. *Holder*, 704 F.3d 980, 991 (D.C. Cir. 2012).

The Fourth Circuit is no exception. It has repeatedly confirmed the availability of as-applied challenges to felon disarmament laws, even if, in the short time since *Heller*, it has never faced a civil as-applied challenge by a non-dangerous individual. "[T]he phrase '*presumptively* lawful regulatory measures' suggests the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in the face of an as-applied challenge.'" *United States* v. *Chester*, 628 F.3d 673, 679 (4th Cir. 2010) (quoting *Williams*, 616 F.3d at 692)) (emphasis in *Chester*); *id.* at 687 ("Chester can plainly challenge the statute as applied to him") (Davis, J., concurring in the judgment); *United States* v. *Smoot*, 690 F.3d 215, 221 (4th Cir 2012); *United States* v. *Moore*, 666 F.3d 313, 319 (4th Cir. 2012).

> [W]e do not hold that any person committing any crime automatically loses the protection of the Second Amendment. The *Heller* Court's holding that defines the core right to bear arms by law-abiding, responsible citizens does not preclude some future determination that persons who commit some offenses might nonetheless remain in the protected class of "law-abiding, responsible" persons.

*United States* v. *Carpio-Leon*, 701 F.3d 974, 981 (4th Cir. 2012).

The courts are not alone in acknowledging that felon disarmament, however proper as a general matter, is inappropriate in particular cases. Many states, such as the convicting state here (Virginia), provide for relief from firearms disabilities in particular cases. So did the Congress that enacted the Gun Control Act of 1968:

> the Attorney General may grant such relief [from the disability of 18 U.S.C. § 922(g)] if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

18 U.S.C. § 925(c). District courts are empowered to review the denial of such relief. While this provisions is currently inoperative for lack of funds, its existence confirms that Congress would not have enacted a felon disarmament law that forecloses all avenues for relief.[1]

## II. MARYLAND'S FELON DISARMAMENT PROVISIONS CANNOT BE CONSTITUTIONALLY APPLIED TO HAMILTON GIVEN HIS FACTUAL CIRCUMSTANCES.

While it is clear that individuals may raise as-applied Second Amendment challenges to felon disarmament laws, a question still exists as to which of two methods should be used to test such claims. In *Heller*, neither the D.C. Circuit nor the Supreme Court employed any means-ends scrutiny to test Washington, D.C.'s challenged gun laws, striking them down simply upon a finding that the laws were inconsistent with the rights guaranteed by the amendment. Indeed, means-ends scrutiny is a modern creation; courts have historically not used any balancing tests in applying the Second Amendment or its various state constitutional analogs.

In *Heller*'s wake, appellate courts, including the Fourth Circuit, have nonetheless favored applying a two-step means-ends scrutiny test in Second Amendment cases. At step one, courts ask whether the challenged laws implicate conduct secured by the Second Amendment. If not, the matter ends there. If so, step two calls for the application of a balancing test to measure the appropriate level of constitutional "fit" between the governmental interests and the law. *Chester*, 628 F.3d at 680.

---

[1] Hamilton is not prohibited from possessing firearms under federal law, as all of his civil rights had been lost, and subsequently restored.

But

> "[t]he *Chester* analysis is more streamlined" in cases involving firearms regulations deemed "presumptively lawful" in *Heller*. That is, a presumptively lawful regulation could not violate the Second Amendment unless, as applied, it proscribed conduct "fall[ing] within the category of . . . 'law-abiding responsible citizens . . . us[ing] arms in defense of hearth and home.'"

*United States* v. *Pruess*, 703 F.3d 242, 245 (4th Cir. 2012) (quoting *Moore*, 666 F.3d at 318-19); *Heller*, 554 U.S. at 635.

In other words, the Fourth Circuit essentially dispenses with the second step of the two-step process in felon-disarmament challenges, because a "presumptively lawful" law is facially constitutional. The only question is whether the claimant, notwithstanding the disabling convictions, "fall[s] within the category of citizens to which the *Heller* court ascribed the Second Amendment protection of 'the right of *law-abiding responsible* citizens to use arms in defense of hearth and home." *Moore*, 666 F.3d at 319 (quoting *Heller*, 554 U.S. at 635) (emphasis in *Moore*).

> [I]f a challenger can show that his circumstances place him outside the intended scope of [a felon disarmament provision], he establishes . . . that he is the "law-abiding citizen" identified in *Heller*. And if he is a law-abiding citizen, the possession of a firearm for protection of hearth and home is not just conduct protected by the Second Amendment, it is the core of the Second Amendment's guarantee.

*Suarez* v. *Holder*, No. 14-968, 2015 U.S. Dist. LEXIS 19378, at *17-*18 (M.D. Pa. Feb. 18, 2015).

To show that a person convicted of a disabling offense "nonetheless remain[s] in the protected class of 'law-abiding, responsible' persons," *Carpio-Leon*, 701 F.3d at 981, "a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Moore*, 666 F.3d at 319; *Smoot*, 690 F.3d at 221. As to which "factual circumstances" must be evaluated,

> *Heller* does not catalogue the facts we must consider when reviewing a felon's as-applied challenge . . . to evaluate [an] as-applied challenge, we look to the historical pedigree of 18 U.S.C. § 922(g) to determine whether the traditional justifications underlying the statute support a finding of permanent disability in this case.

*Barton*, 633 F.3d at 173.

The "traditional justifications" for disarming felons are plain enough: dangerous people should not have firearms. "Debates from the Pennsylvania, Massachusetts and New Hampshire ratifying conventions, which were considered 'highly influential' by the Supreme Court in *Heller* . . . confirm that the common law right to keep and bear arms did not extend to those who were likely to commit violent offenses." *Id.*; *cf.* 18 U.S.C. § 925(c) (relief from disability where "the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest").

Of course the nature and extent of the claimant's criminal history is a significant, sometimes preclusive aspect of one's "factual circumstances" examined in such cases. *See, e.g.*, *Moore*, 666 F.3d at 320 ("Particularly in light of his extensive and violent criminal history, Moore's conduct here is plainly outside the scope of the Second Amendment."); *Smoot*, 690 F.3d at 221 & n.8 ("remarkably egregious" criminal history "which in the aggregate demonstrate[s] a pattern of criminality placing his character well outside any definition of 'law-abiding'"); *Pruess*, 703 F.3d at 246 ("Pruess' repeated violations of the firearms laws, leading to at least twenty prior convictions, make clear he is hardly 'law-abiding' and 'responsible.'").

Because the touchstone of the inquiry is dangerousness, a felon may be disarmed even though all the predicate convictions are themselves non-violent. *Pruess*, 703 F.3d at 247. For example, "[c]ourts have held in a number of contexts that offenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime," and those offenses thus support a

firearms prohibition. *Barton*, 633 F.3d at 174 (citations omitted). Yet while a felon's criminal history might be so serious, or so trivial, as to determine the as-applied challenge's outcome in either direction, the cases make clear that the inquiry is a holistic one. Thus, even a drug-trafficking conviction that would ordinarily justify a prohibition might, given the totality of the circumstances, not justify a firearms disability. *See Britt v. State*, 363 N.C. 546, 681 S.E.2d 320 (N.C. 2009). As the Third Circuit observed, essentially mirroring Congress's determination in enacting 18 U.S.C. § 925(c),

> To raise a successful as-applied challenge, [an individual] must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society.

*Barton*, 633 F.3d at 174.

Two recent decision, from the Eastern and Middle Districts of Pennsylvania, exemplify as-applied Second Amendment relief. In *Suarez*, the plaintiff's criminal history included a Maryland conviction for having a handgun in his car without the benefit of a carry license, for which he was disarmed under 18 U.S.C. § 922(g)(1), as well as a subsequent conviction for driving under the influence of alcohol. Neither conviction could be classified as a violent crime, and indeed, the plaintiff was an otherwise upstanding citizen with a stable family life and a "secret" clearance in connection with his work as a defense contractor.

In *Binderup* v. *Holder*, No 13-6750, 2014 U.S. Dist. LEXIS 135110 (E.D. Pa. Sept. 25, 2014), the plaintiff's criminal history consisted only of a non-violent misdemeanor conviction for "corruption of a minor," arising from a consensual if illicit affair. Like Mr. Suarez, Mr. Binderup

had a stable family life, was a productive and peaceful member of his community, and notwithstanding the federal prohibition, had seen his firearm rights restored by his state of residence.

Suarez and Binderup both prevailed.[2] So should Hamilton. While his convictions are not, as in those cases, decades old, there is no reason why Hamilton should have to wait so long to exercise his fundamental rights in Maryland when he already suffers no federal prohibition, and no prohibition in the state where he was convicted. *Cf. Ezell* v. *City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (loss of Second Amendment rights constitutes irreparable harm). He has never been violent, was not convicted of a crime that was either violent or related in any way to violence, and has proven himself to be a stable and reliable member of the community. Virginia even trusts him to be an armed guard. There is no reason why he should be unable to guard himself and his family at home.

## CONCLUSION

There being no dispute of material facts, James Hamilton is entitled to summary judgment as a matter of law.

Dated: October 26, 2015

Respectfully submitted,

By: /s/ Alan Gura
Alan Gura*
Gura & Possessky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
alan@gurapossessky.com

*Admitted pro hac vice

By: /s/ Cary J. Hansel
Cary J. Hansel
Hansel Law, P.C.
2514 N. Charles Street
Baltimore, MD 21218
301.461.1040/Fax 443.451.8606
cary@hansellaw.com

Attorneys for Plaintiff

[2]The Government has appealed its losses in *Binderup* and *Suarez*, but the Third Circuit has not yet decided either appeal. *Binderup* was argued July 9, 2015. *Suarez* is tentatively set for argument November 17, 2015.